**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff*, | |
| **v.** | **Case No. CR-20-064-RAW** |
| **TOMMY RYAN GOUGE,** | |
| *Defendant.* | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION IN LIMINE REGARDING PHOTOGRAPHS

**COMES NOW**, the United States of America by and through Brian J. Kuester, United States Attorney and Benjamin P. Gifford, Assistant United States Attorney, and respectfully submits this Response to Defendant's First Motion in Limine Regarding Photographs.  (Doc. 30). In support of this Response, the Government respectfully states as follows:

### FACTUAL BACKGROUND

On February 14, 2020, at approximately 4:30 p.m., an individual called 911, spoke with dispatch, and identified himself as Tommy Gouge (Defendant).  Defendant casually expressed to the dispatcher that he had just killed his wife and would be out in the yard with his kids awaiting the arrival of law enforcement.  He stated that he was, and would remain unarmed.  The dispatcher alerted the on-duty Okfuskee County deputies who called Okfuskee County Sheriff, James Rasmussen.  Sheriff Rasmussen notified the responding deputies that he was enroute and that they should await his arrival before speaking with anyone.

Sheriff Rasmussen arrived at 419 East Main Street, Clearview, Oklahoma in Okfuskee County (Creek Reservation) at 4:45 p.m. accompanied by Deputies Tim Rowland and Nikita Muse.  Upon arrival, Sheriff Rasmussen observed Defendant standing in the yard with three

children; a 12-year-old girl (Ta.H.), an 8-year-old boy (T.H.), and a 1 year and 11-month-old girl (T.G.). Defendant was smoking a cigarette and drinking a bottle of water. Defendant immediately admitted that he had killed his wife, Stephanie M. Gouge, and that her body was in the house. The Sheriff asked that the three children be placed in the back of his car before proceeding with the investigation. By this time, an investigator from the Okfuskee County Sheriff's Office had arrived on scene to assist (Logan Manshack). The Sheriff directed Manshack and Rowland to enter the home, confirm the victim was beyond medical care, and secure the scene. Sheriff Rasmussen then handcuffed Defendant, conducted a pat down for weapons, and told him that Deputy Muse would take him to the sheriff's office where they could continue their conversation. The children were left with a trusted neighbor while the Sheriff proceeded to the station with Defendant. By approximately 5:00 p.m., Sheriff Rasmussen contacted Child Welfare Services (Stacey Vass) and briefed her on the situation.

At approximately 5:15 p.m., while in the Okfuskee County Sheriff's Office Interview Room, Sheriff Rasmussen read Defendant his *Miranda* rights and provided them to him in writing. Defendant waived his rights and agreed to speak in a recorded conversation. Defendant stated that when he got out of jail on February 11, 2020, he discovered several new and odd behaviors taken on by his wife. He repeatedly claimed she had been stealing from him and using and selling drugs. Defendant stated that over the course of his two days in the house, his wife was frequently texting someone. On the afternoon of the murder, Valentine's Day (2/14/2020), while in the bedroom, Defendant stated that he took her phone and discovered that she had been texting an individual named Jeff Buckley, saying she loved him and sending Mr. Buckley erotic pictures. Defendant stated that when he confronted his wife about the pictures, she denied they were of her. Defendant told her he knew it was her and the argument escalated until he claims she pulled a knife. Defendant stated, "She came at me with a knife and after that I took care of it. I stabbed her in the

side. I just kept fucking beating her in the head…[until] her head [was] wide open." Defendant said he "used a heavy thing you jack cars up with [that was] in the living room" and that "I just busted her till her head's wide open…I told her don't fuck with me. You keep on with your shit, I'm not going to beat you—if I'm going in [to prison], I'm going in for life. I'm going to fucking kill you." Defendant told the Sheriff that he believed his wife had been with this other man in Weleetka since December when she worked at the 'Outlaw Diner'. Defendant showed Sheriff Rasmussen the text conversation on a phone he had in his possession at the time of his arrest, which included the pictures sent from his wife. Sheriff Rasmussen said, "And you found those…" Defendant interrupted, "Just a while ago. That's why I killed her ass."

Defendant repeated that his wife continued to claim the pictures were not of her and that he responded by telling her, "That is you [in the pictures]! That is you! Quit lying!" That was when she grabbed the knife." Defendant demonstrated blocking it, "I thought it was kind of a joke [so] I grabbed [the knife] and threw her." The Sheriff asked if that was when Defendant stabbed her and he repeated, "Yeah, [I said] that I wasn't gonna go to jail for no attempted murder or no aggravated. I told her I'm gonna kill you this time. I'm not gonna fuck with you."

Sheriff Rasmussen asked how they got into the living room from the bedroom, the location within the house where she was murdered. Defendant stated that she ran in there against the wall where she pleaded, "I don't want him. I wanna be with you" (after she had already been stabbed). Defendant said, "After that I just done her in" noting that the weapons he used to commit the murder were placed on the kitchen counter (the car jack and the knife). Sheriff Rasmussen booked Defendant into the Okfuskee County Jail on the charge of Murder. During the booking process, Sheriff Rasmussen took Defendant's shoes and clothing into evidence. Blood had been noticeably spattered all over Defendant's shoes.

A subsequent crime scene investigation by Oklahoma State Bureau of Investigation (OSBI)

Crime Scene Technician Ryan Woolly and Medical Examiner Investigator John Miller, revealed the body of Stephanie Michelle Gouge was lying face down just inside the front door of the home. She had a knife wound on her right side about chest high as well as significant trauma to her skull. A hilt-less knife and a heavy steel "bottle" jack with what appeared to be blood and hair on them were located on the kitchen counter.

## PROCEDURAL HISTORY

The United States will only provide pictures depicting the victim's injuries that are necessary in proving the elements of the charged offense. This will primarily consist of photographs taken as part of the investigation while at the scene of the crime. In addition to the photographs of the victim's body found at the scene, the United States will seek to introduce photographs from the medical examination to show the jury the nature and unobstructed location of the injuries.

## ARGUMENT & AUTHORITY

Defendant's motion implicates Fed. R. Evid. 401 and 403. In making the determination of relevancy, it is important to consider the context of the count in the Indictment: First Degree Murder. This single count charges the defendant with Murder in Indian Country in violation of 18 U.S.C. § 1111(a), 1151, and 1153. Put another way, the defendant is charged with first degree murder which requires premeditation and malice aforethought.

The Tenth Circuit's Pattern Criminal Jury Instruction at 2.52 (2018) provides the following on premeditation and malice aforethought:

> A killing is "premeditated" when it is the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent. You should consider all the facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the defendant's mind, before and at the time of the killing.

To kill "with malice aforethought" means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life. To find malice aforethought, you need not be convinced that the defendant hated the person killed, or felt ill will toward the victim at the time.

Evidence is relevant under Rule 401 if it has any tendency to make the existence of any fact of consequence more probable than it would be without the evidence. *United States v. Shomo*, 786 F.2d 981, 985 (10th Cir. 1986). The law favors admission of all relevant evidence. *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014).

Rule 403 and its balancing test serves as a limitation on the admissibility of relevant evidence when its probative value is substantially outweighed by unfair prejudice. In performing the balancing test, the "court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value"; evidence is only unfairly prejudicial "if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude towards the defendant wholly or apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Nevels*, 490 F.3d 800, 805 (10th Cir. 2007)(internal citations and quotations omitted). Exclusion under Rule 403 is "an extraordinary remedy [that] should be used sparingly." *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014).

In the context of crime scene pictures, "the prosecution is entitled to prove its case by evidence of its own choice." *United States v. Nelson*, 801 Fed.Appx. 652, 660 (10th Cir. 2020)(unpublished)(internal citations and quotations omitted). In *Nelson*, a case from the Western District of Oklahoma, the Tenth Circuit upheld a conviction of a defendant charged with carjacking, kidnapping, being a convicted felon in possession of a firearm, and use and discharge of a firearm during a crime of violence. *Nelson*, 801 Fed.Appx. at 655. In that case, the defendant shot a victim in the face, and the gunshot wound destroyed the victim's eyes and caused permanent blindness. *Id*. At trial, the United States entered pictures of the victim's injuries into evidence;

the pictures were taken in the emergency room before medical professionals cleaned or treated the gunshot wound. *Id.*, at 658-59. The pictures depicted significant and irreversible damage to the victim's eye, and also depicted blood on the victim's face and sheets. *Id.*

The United States offered the pictures to show the defendant intended to cause death or serious bodily injury, that the defendant actually sustained serious bodily injury (an element of the carjacking), and to prove that the defendant discharged a firearm. *Id.* The defendant objected similarly to the defendant in this case—mainly that the pictures could trigger an emotional response in the jurors, suggesting they are "prejudicial," "gruesome," and lack "any probative value because they do not shed light on a disputed element of his crimes, such as intent." *Id.*

In affirming the district court's denial of the defendant's objection and subsequent admission of the pictures, the Tenth Circuit held that "gruesomeness alone does not make photographs inadmissible." *Nelson*, 801 Fed.Appx. at 559-60 (internal citations and quotations omitted). Further, the Tenth Circuit held the pictures, while "disturbing," were not unduly inflammatory or "so shocking as to have unfairly prejudiced the defendant." *Id.* (internal citations and quotations omitted).

Here, the United States submits the motive for the premeditated murder was jealousy by the defendant over Stephanie Gouge's relationship with another man. This is evidenced by the brutality of the assault, calculated mutilation of the victim's body, as well as the statements from Defendant himself.

The crime scene pictures are probative to show the jury the necessary state of mind for premeditation, malice aforethought, and the lengths to which Defendant went through to not only allegedly disarming the victim, but telling her he was planning to kill her and following through with multiple stabs and strikes to the body. The pictures depict deep wounds to the victim's head and skull which were clearly designed to kill the victim and speak to the defendant's intent to kill.

Thus, the pictures make it more probable that the Defendant, and not some other person, murdered the victim and did so with premeditation, malice aforethought, and intent to kill.  What is more, the defendant admitted to killing the victim and clearly expressed that his desire was to ensure that she was dead.  The pictures will be used to contradict any potential self-defense or heat of passion theory.  The crime scene photographs will also serve to corroborate much of the Defendant's statement to include how he stabbed the victim with the knife, while in a bedroom, and threw her from the bedroom to the living room where she begged for her life before the Defendant took a car jack handle and crushed her skull.

Autopsy pictures used to show the extent of injuries and cause of death are routinely allowed into evidence as a substantial aid in illustrating the testimony of the pathologist.  *United States v. Soundingsides*, 820 F.3d 1232, 1243 (10th Cir. 1987)(internal citations and quotations omitted). Autopsy pictures can also serve as probative evidence on the malice aforethought element of a murder.  *Id*.  Further, autopsy pictures are not cumulative because the autopsy pictures depict the body from different angles than crime scene pictures and thereby give the jury a more complete understanding of the injuries.  *Id*.

Here, photographs from the medical examination will be used to illustrate the testimony of the medical examiner and depict the manner and cause of death.  The autopsy pictures will also be used as evidence on premeditation and malice aforethought—both elements of charged count in the Indictment.

**CONCLUSION**

WHEREFORE, the United States submits the defendant has not shown any unfair prejudice that substantially outweighs the probative value of the pictures from the crime scene and autopsy, and the United States asks this Court to rule that such pictures be admissible at trial.

Respectfully submitted,

BRIAN J. KUESTER
United States Attorney

s/     BENJAMIN P. GIFFORD
BENJAMIN P. GIFFORD, TX #24111143
Assistant United States Attorney
Attorney for the Plaintiff
520 Denison Avenue
Muskogee, OK 74401
Phone: (918) 684-5100
ben.gifford@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 27, 2020, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant: Robert S. Williams, Attorney for Tommy Ryan Gouge.

s/     BENJAMIN P. GIFFORD
BENJAMIN P. GIFFORD
Assistant United States Attorney