**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| **v.** | **Case No. CR-20-064-RAW** |
| **TOMMY RYAN GOUGE,** | |
| *Defendant.* | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S THIRD MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE OF PRIOR VIOLENCE AGAINST STEPHANIE GOUGE**

**COMES NOW**, the United States of America by and through Brian J. Kuester, United States Attorney and Benjamin P. Gifford, Assistant United States Attorney, and respectfully submits this Response to Defendant's Third Motion *in Limine* to Exclude Evidence of Prior Violence Against Stephanie Gouge. (Doc. 34). In support of this Response, the Government respectfully states the acts identified in the Defendant's Motion *in Limine* as objectionable are actually inextricably intertwined and intrinsic evidence which explain the purpose for the brutal murder of Defendant's wife and establish that Defendant did not kill his wife due to a sudden quarrel or "heat of passion.".[1]

**INTRODUCTION**

On September 23, 2020, Defendant was arraigned on an indictment charging him with Murder in Indian Country in violation of Title 18, United States Code, Sections 1111(a), 1151 and

---

[1] The Government's response will address the "other acts" evidence as inextricably intertwined and intrinsic evidence to the charged acts. A separate "Notice of Other Crimes, Wrongs, or Acts" will be filed by the Government in support of the proffered acts as tending to establish motive, opportunity, intent, plan, knowledge, identity, absence of mistake, or lack of accident pursuant to Fed. R. Evid. 404(b).

1153 and remanded to the custody of the United States Marshal. (Doc. 13). Trial by Jury is set to take place on January 5, 2020, in Courtroom 2.

## FACTUAL BACKGROUND

On February 14, 2020, at approximately 4:30 p.m., an individual called 911, spoke with dispatch, and identified himself as Tommy Gouge (Defendant). Defendant casually expressed to the dispatcher that he had just killed his wife and would be out in the yard with his kids awaiting the arrival of law enforcement. He stated that he was, and would remain unarmed. The dispatcher alerted the on-duty Okfuskee County deputies who called Okfuskee County Sheriff, James Rasmussen. Sheriff Rasmussen notified the responding deputies that he was enroute and that they should await his arrival before speaking with anyone.

Sheriff Rasmussen arrived at 419 East Main Street, Clearview, Oklahoma in Okfuskee County (Creek Reservation) at 4:45 p.m. accompanied by Deputies Tim Rowland and Nikita Muse. Upon arrival, Sheriff Rasmussen observed Defendant standing in the yard with three children; a 12-year-old girl (Ta.H.), an 8-year-old boy (T.H.), and a 1 year and 11-month-old girl (T.G.). Defendant was smoking a cigarette and drinking a bottle of water. Defendant immediately admitted that he had killed his wife, Stephanie M. Gouge, and that her body was in the house. The Sheriff asked that the three children be placed in the back of his car before proceeding with the investigation. By this time, an investigator from the Okfuskee County Sheriff's Office had arrived on scene to assist (Logan Manshack). The Sheriff directed Manshack and Rowland to enter the home, confirm the victim was beyond medical care, and secure the scene. Sheriff Rasmussen then handcuffed Defendant, conducted a pat down for weapons, and told him that Deputy Muse would take him to the sheriff's office where they could continue their conversation. The children were left with a trusted neighbor while the Sheriff proceeded to the station with Defendant. By approximately 5:00 p.m., Sheriff Rasmussen contacted Child Welfare Services (Stacey Vass) and

briefed her on the situation.

At approximately 5:15 p.m., while in the Okfuskee County Sheriff's Office Interview Room, Sheriff Rasmussen read Defendant his *Miranda* rights and provided them to him in writing. Defendant waived his rights and agreed to speak in a recorded conversation. Defendant stated that when he got out of jail on February 11, 2020, he discovered several new and odd behaviors taken on by his wife. He repeatedly claimed she had been stealing from him and using and selling drugs. Defendant stated that over the course of his two days in the house, his wife was frequently texting someone. On the afternoon of the murder, Valentine's Day (2/14/2020), while in the bedroom, Defendant stated that he took her phone and discovered that she had been texting an individual named Jeff Buckley, saying she loved him and sending Mr. Buckley erotic pictures. Defendant stated that when he confronted his wife about the pictures, she denied they were of her. Defendant told her he knew it was her and the argument escalated until he claims she pulled a knife. Defendant stated, "She came at me with a knife and after that I took care of it. I stabbed her in the side. I just kept fucking beating her in the head…[until] her head [was] wide open." Defendant said he "used a heavy thing you jack cars up with [that was] in the living room" and that "I just busted her till her head's wide open…I told her don't fuck with me. You keep on with your shit, I'm not going to beat you—if I'm going in [to prison], I'm going in for life. I'm going to fucking kill you." Defendant told the Sheriff that he believed his wife had been with this other man in Weleetka since December when she worked at the 'Outlaw Diner'. Defendant showed Sheriff Rasmussen the text conversation on a phone he had in his possession at the time of his arrest, which included the pictures sent from his wife. Sheriff Rasmussen said, "And you found those…" Defendant interrupted, "Just a while ago. That's why I killed her ass."

Defendant repeated that his wife continued to claim the pictures were not of her and that he responded by telling her, "That is you [in the pictures]! That is you! Quit lying!" That was

when she grabbed the knife." Defendant demonstrated blocking it, "I thought it was kind of a joke [so] I grabbed [the knife] and threw her." The Sheriff asked if that was when Defendant stabbed her and he repeated, "Yeah, [I said] that I wasn't gonna go to jail for no attempted murder or no aggravated. I told her I'm gonna kill you this time. I'm not gonna fuck with you."

Sheriff Rasmussen asked how they got into the living room from the bedroom, the location within the house where she was murdered. Defendant stated that she ran in there against the wall where she pleaded, "I don't want him. I wanna be with you" (after she had already been stabbed). Defendant said, "After that I just done her in" noting that the weapons he used to commit the murder were placed on the kitchen counter (the car jack and the knife). Sheriff Rasmussen booked Defendant into the Okfuskee County Jail on the charge of Murder. During the booking process, Sheriff Rasmussen took Defendant's shoes and clothing into evidence. Blood had been noticeably spattered all over Defendant's shoes.

A subsequent crime scene investigation by Oklahoma State Bureau of Investigation (OSBI) Crime Scene Technician Ryan Woolly and Medical Examiner Investigator John Miller, revealed the body of Stephanie Michelle Gouge was lying face down just inside the front door of the home. She had a knife wound on her right side about chest high as well as significant trauma to her skull. A hilt-less knife and a heavy steel "bottle" jack with what appeared to be blood and hair on them were located on the kitchen counter.

## LEGAL AUTHORITY

Fed. R. Evid. 401. Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 403:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 404(b):

(b) CRIMES, WRONGS, OR OTHER ACTS.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b) does not apply to exclude acts that are "inextricably intertwined" or intrinsic with the charged offense. *United States v. Parker*, 553 F.3d 1309 (10th Cir. 2009).  Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined, when both acts are part of a single criminal episode, or when the other acts were necessary preliminaries to the crime charged.  *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990); *United States v. Stovall*, 825 F.2d 817 (5th Cir. 1987); *United States v. Roylance*, 690 F.2d 164 (10th Cir. 1982); *United States v. Lenfesty*, 923 F.2d 1293, 1298 (8th Cir 1991), *cert. denied*, 499 U.S. 968 (1991).  Also, evidence is intrinsic when exclusion would leave a "chronological or conceptual void in the story of the crime..."  *United States v. Ojomo*, 332 F.3d 485, 488-89 (7th Cir. 2003), and when the acts complete the story of the crime on trial. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002), *cert. denied*, 536 U.S. 934 (2002); or evidence that explains the circumstances of the case.  *United States v. Holt*, 460 F.3d 934 (7th Cir. 2006), see also *United States v. Kupfer,* 797 F.3d 1233, 1238 (10th Cir. 2015).

In the context of Rule 404(b), the foundation for admissibility is governed by *Huddleston v. United States*, 485 U.S. 681 (1988).  The trial court must find there is sufficient evidence to support a finding of facts that make the evidence relevant, *i.e.*, that the act occurred and that the defendant committed the act.  The trial court does not weigh credibility nor makes a finding that the proponent has proven the necessary fact by a preponderance.  The evidence is admitted if the court finds that the jury could find by a preponderance the conditional facts.  This ruling is made pursuant to Rule 404(b).  *Huddleston,* at 689-91; *United States v. Henthorn,* 864 F.3d 1241, 1254-55 (10th Cir. 2017).  In *United States v. Henthorn,* 864 F.3d 1241, 1252 (10th Cir. 2017), the court stated that the evidence may be admissible even if the act has a tendency to allow the jury to "infer criminal propensity" as long "as the jury '[i]s not required to make any such inference…'"  Evidence of bad acts will always be prejudicial, but it is the trial court's job to balance that risk against the "legitimate contribution of the evidence."  *United States v. Patterson*, 20 F.3d 809, 814 (10th Cir. 1994), *cert. denied*, 513 U.S. 841 (1994).

Federal Evidence Rule 804(b)(6) is a hearsay exception that requires unavailability for a "statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result."  A defendant can forfeit his Confrontation Clause rights through wrongdoing, even if the requirements of Rule 804(b)(6) are not met. *United States v. Garcia Meza*, 403 F.3d 364, 370-71 (6th Cir. 2005).  In *Garcia-Meza*, following a jury trial, defendant was convicted in the United States District Court for the Western District of Michigan, of first degree murder for the stabbing death of his wife, and defendant appealed.  The Sixth Circuit held that: (1) evidence that defendant assaulted his wife five months prior to her murder was admissible to show proof of motive to commit murder; (2) probative value of evidence that defendant assaulted his wife five months prior to her murder was not outweighed by potential prejudice; (3) hearsay evidence of defendant's prior assault against

wife did not violate defendant's Sixth Amendment right to confront witnesses, where defendant

procured her unavailability to testify; and (4) prosecutorial statements during closing arguments

concerning the concept of premeditation, even if improper, were clearly not flagrant as required to

warrant reversal of conviction.

In *Ohio v. Clark*, 135 S. Ct. 2173 (2015), a statement by an abuse victim to his teacher was

determined to be non-testimonial "because neither the child nor his teacher had the primary

purpose of assisting in Clark's prosecution…" While statements to non-law enforcement personnel

can be testimonial, statements to such witnesses are "significantly less likely to be testimonial…"

See also *Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004) (statements in conversation with acquaintance

non-testimonial and admissible under state of mind exception as showing intent to rob).

## ARGUMENT

Defendant's motion implicates Fed. R. Evid. 401, 403, 404(b), 801, 802, and 804.

Defendant is specifically concerned about references to previous acts of violence by Defendant

against Stephanie Gouge including references suggested by "other people" that Stephanie had told

those acquaintances that Defendant was going to kill her.  In the case of the statements to "other

people", these were non-testimonial statements made to friends and relatives which will be detailed

in Government's 404(b) notice.  For the purposes of this Response, the Government argues that

the declarant has been made unavailable by the wrongdoing of the Defendant, so regardless, these

statements would not violate the Confrontation Clause, and are thus, admissible.

Defendant is seeking to exclude the facts and circumstances surrounding the arrest of

Defendant in January of 2020 for Felon in Possession of a Firearm, and Possession of a Stolen

Firearm.  As the Government previously discussed in Government's Response to Defendant's

Second Motion *in Limine*, the facts as described in that case are inextricably intertwined from the

eventual murder.  In that matter, Defendant repeatedly punched Stephanie Gouge.  Although

investigators at the time did not charge domestic assault, but the allegation was indeed made to law enforcement that Defendant had assaulted his wife. The stolen gun, eventually found in the home and brought to the attention of law enforcement by Defendant's wife, was a gun that Defendant initially claimed did not belong to him. Outside of his statement to law enforcement that the gun was not his, Defendant chose to make no additional statements. He eventually pled guilty to the gun charge, forgoing a trial.

This arrest, which led to pre-trial incarceration of approximately 30 days, enraged Defendant. He ostensibly felt betrayed by his wife. Less than three days after his release from his conviction on the gun charge, he murdered her. The exclusion of the January incident, or any corresponding statements by the victim that Defendant wanted to harm and kill her, would lead to a conceptual and chronological void in the story of this murder. The jury must be permitted to hear the entirety of the details as they are inextricably intertwined and do not inherently or inappropriately require a finding of criminal propensity.

Notably, Defendant cites *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) in making his Sixth Amendment argument to suggest he is entitled to confront the victim about her previous statements. In *Crawford*, the defendant was tried for assault and attempted murder. *Id.,* at 40. The defendant's wife had made statements during a recorded police interrogation that affected the defendant's claim of self-defense, but she did not testify at trial under a claim of marital privilege. *Id*. The Supreme Court ruled that the Sixth Amendment required "unavailability and a prior opportunity for cross-examination" for prior statements to be admitted at a criminal trial. *Id.* at 68-69. Unlike *Crawford*, here, Stephanie Gouge is unavailable because Defendant killed her. In the January arrest and subsequent conviction for Felon in Possession of a Firearm, it was Stephanie Gouge who made statements guiding the conduct and outcome of that case. Defendant elected to plead guilty in that matter intentionally forgoing his prior opportunity for cross-examination.

Regardless, in both *Crawford* and *Davis v. Washington*, 547 U.S. 813 (2006) the Supreme

Court noted the existence of the doctrine of 'forfeiture by wrongdoing', which "extinguishes

confrontation claims on essentially equitable grounds." *Crawford*, at 62. "That is, one who obtains

the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis*,

at 833. It may be argued that Defendant's intent in killing his wife was not to silence her testimony,

but that may very well have been a motive for Defendant's act of violence. Defendant was angered

by his wife's lifestyle, by her perceived infidelity, and by the fact that she was seeking to have him

incarcerated for his violent and otherwise criminal behavior. The evidence suggests that

Defendant had myriad reasons for killing his wife. "The government is not required to show that

a defendant's sole purpose was to silence the declarant." *United States v. Cazares*,

2015 WL 2242519 (9th Cir. 2015). To be sure, the Government believes that Defendant did want

to silence his wife for her acts and prior statements which led to his incarceration for firearm

possession, her perceived infidelity, and his overall anger and frustration with their marriage.

The instant case is analogous to the above cited *Garcia Meza*, 403 F.3d 364, (6th Cir. 2005).

The Court, in that matter dealt with the exact same issue now before the Court:

> "The Defendant argues that [the victim's] statements concerning the [prior domestic] assault were testimonial because they were given to police officers while investigating a crime. The government, on the other hand, argues that the statements were not testimonial since they were excited utterances that were not elicited from structured police questioning and bore no resemblance to the formalized examinations conducted in early English law. We need not decide today, however, whether a victim's excited utterance made to an investigating police officer is testimonial, for the Defendant has forfeited his right to confront Kathleen [the victim] because his wrongdoing is responsible for her unavailability. See *Crawford,* 541 U.S. 36, 124 S.Ct. at 1370, 158 L.Ed.2d 177 ("[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds"); *Reynolds v. United States,* 98 U.S. 145, 158–59, 25 L.Ed. 244 (1879) ("The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away.... The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own

wrong."). <u>See also</u> *United States v. Cromer,* 389 F.3d 662, 679 (6th Cir.2004) (noting that if "the witness is only unavailable to testify because the defendant has killed or intimidated her, then the defendant has forfeited his right to confront that witness."). As noted above, in this case, defendant admitted that he killed Kathleen, thereby procuring her unavailability to testify. The dispute at trial concerned not whether he was the one to stab her, but whether he acted with premeditation to support a conviction of first degree murder. Under these circumstances, there is no doubt that the Defendant is responsible for Kathleen's unavailability. Accordingly, he has forfeited his right to confront her. The Defendant, however, argues that for the rule of forfeiture to apply, a defendant must have killed or otherwise prevented the witness from testifying with the specific intent to prevent her from testifying. Since he did not kill her with the specific intent to prevent her from testifying, the Defendant argues, he should not be found to have forfeited his right to confront her. There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his right to confront the witness where, in procuring the witness's unavailability, he intended to prevent the witness from testifying. Though the Federal Rules of Evidence may contain such a requirement, *see* Fed.R.Evid. 804(b)(6), the right secured by the Sixth Amendment does not depend on, in the recent words of the Supreme Court, "the vagaries of the Rules of Evidence." *Crawford,* 124 S.Ct. at 1370. The Supreme Court's recent affirmation of the "essentially equitable grounds" for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on principles of equity, does not permit."

*United States v. Garcia-Meza*, 403 F.3d 364, 370–71 (6th Cir. 2005).

*Garcia-Meza* holds that a defendant who forfeits his confrontation rights through wrongdoing need not have a definitive motive to silence a potential witness who would testify against the defendant. Instead, *Garcia-Meza* holds that wrongdoing forfeits a defendant's right of confrontation where the wrongdoing causes a defendant to benefit from a witness's subsequent unavailability. Here, as in *Garcia-Meza*, there is no requirement for Defendant Gouge, who admittedly killed Stephanie Gouge, to have had the intention of killing her to prevent her from testifying (although, as discussed above, that may have indeed been a part of his calculation). Although Fed.R.Evid. 804(b)(6) suggests the importance of motive, it is clouded in the Rule's own "vagaries", and, as the Court noted above, the rule's applicability does not "hinge on the

wrongdoer's motive". To find otherwise would bestow upon Tommy Gouge, the benefit of preventing a witness to testify against him through his murderous wrongdoing.

## CONCLUSION

The proffered evidence related to Defendant's history of violence as against Stephanie Gouge has immense probative value are inextricably intertwined and intrinsic to the charged acts of the Defendant, and should be admitted as they are necessary preliminaries to the crime charged and establish the circumstances and chronological story surrounding this murder. Declarant's statements regarding Defendant's desire to kill her were made to acquaintances, were non-testimonial, and, as she was made unavailable by the wrongdoing of Defendant, thus, they should be permitted. In addition, the events in January 2020, chronologically and conceptually led into the murder the following month and are inextricably intertwined. Regardless, Defendant forfeited his right to confrontation through his own, voluntary and heinous, wrongdoing.

WHEREFORE, premises considered, the Government respectfully requests this Court DENY the requested relief sought by Defendant, and for any and all other relief the Court deems just and proper.

Respectfully submitted,

BRIAN J. KUESTER
United States Attorney

s/ Benjamin P. Gifford
BENJAMIN P. GIFFORD, TX #24111143
Assistant United States Attorney
Attorney for the Plaintiff
520 Denison Avenue
Muskogee, OK 74401
Phone: (918) 684-5100
ben.gifford@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 30, 2020, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Robert S. Williams, Attorney for Tommy Ryan Gouge**.**

BENJAMIN P. GIFFORD
United States Attorney's Office