IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>**TOMMY RYAN GOUGE**,<br><br>*Defendant*. | Case No. CR-20-64-RAW |

## GOVERNMENT'S TRIAL BRIEF

COMES NOW the Plaintiff, the United States of America, by and through United States Attorney Brian J. Kuester, and Assistant United States Attorney Benjamin P. Gifford, and respectfully submits its brief for trial in the above-styled case.

### I. STATUS OF THE CASE

A. A trial is set for January 5, 2021, at 9:00 a.m. before the Honorable Ronald A. White.

B. Estimated time for trial is three days.

C. Defendant is in custody.

D. Trial by jury has not been waived.

E. An interpreter will not be required.

F. The Government expects to call approximately 16 witnesses.

G. The Government expects to introduce approximately 60 exhibits consisting of a knife, Car "Bottle" Jack, Judgement and Commitments, Judgment and Sentencings, a recorded 911 call, a recorded interview with the Defendant, a Medical Examiner's Report, a pair of bloody shoes, and myriad photographs.

H. Stipulations have not yet been formally reached, however, it appears from *Defendant's Proposed Jury Instructions*, p. 6, *Proposed Instruction No. 1*, that there will be, at a minimum, a stipulation as to the fact that this crime occurred within Indian Country.

I. The Defendant has not given notice of alibi or witnesses they intend to call at trial.

J. The Defendant has indicated that he intends to present evidence for the affirmative defense of self-defense.

## II. THE CHARGE IN THE INDICTMENT

### Count One: Murder In Indian Country in Violation of 18 U.S.C. §§ 1111(a), 1151, and 1153

**Elements:**

*First:* The defendant caused the death of the victim, Stephanie Michelle Gouge;

*Second:* The defendant killed the victim with malice aforethought;

*Third:* The killing was premeditated;

*Fourth*: The killing took place within Indian country;

*Fifth:* The defendant was an Indian.

## III. INTRODUCTION

On February 14, 2020, at approximately 4:30 p.m., an individual called 911, spoke with dispatch, and identified himself as Tommy Gouge (Defendant). Defendant casually expressed to the dispatcher that he had just killed his wife and would be out in the yard with his kids awaiting the arrival of law enforcement. He stated that he was, and would remain, unarmed. The dispatcher alerted the on-duty Okfuskee County deputies who called Okfuskee County Sheriff James Rasmussen. Sheriff Rasmussen notified the responding deputies that he was enroute and that they should await his arrival before speaking with anyone.

Sheriff Rasmussen arrived at 419 East Main Street, Clearview, Oklahoma in Okfuskee County (Creek Reservation) at 4:45 p.m. accompanied by Deputies Tim Rowland and Nikita Muse. Upon arrival, Sheriff Rasmussen observed Defendant standing in the yard with three children; a 12-year-old girl (Ta.H.), an 8-year-old boy (T.H.), and a 1 year and 11-month-old girl (T.G.). Defendant was smoking a cigarette and drinking a bottle of water. Defendant immediately admitted that he had killed his wife, Stephanie M. Gouge, and that her body was in the house. The Sheriff asked that the three children be placed in the back of his car before proceeding with the investigation. By this time, an investigator from the Okfuskee County Sheriff's Office had arrived on scene to assist (Logan Manshack). The Sheriff directed Manshack and Rowland to enter the home, confirm the victim was beyond medical care, and secure the scene. Sheriff Rasmussen then handcuffed Defendant, conducted a pat down for weapons, and told him that Deputy Muse would take him to the Sheriff's office where they could continue their conversation. The children were left with a trusted neighbor while the Sheriff proceeded to the station with Defendant. By approximately 5:00 p.m., Sheriff Rasmussen contacted Child Welfare Services (Stacey Vass) and briefed her on the situation.

At approximately 5:15 p.m., while in the Okfuskee County Sheriff's Office Interview Room, Sheriff Rasmussen read Defendant his *Miranda* rights and provided them to him in writing. Defendant waived his rights and agreed to speak in an audio and video recorded conversation. Defendant stated that when he got out of jail on February 11, 2020, he discovered several new and odd behaviors taken on by his wife. He repeatedly claimed she had been stealing from him and using and selling drugs. Defendant stated that over the course of his two days in the house, his wife was frequently texting someone. On the afternoon of the murder, Valentine's Day (February 14, 2020), while in the bedroom, Defendant stated that he took her phone and discovered that she had

been texting an individual named Jeff Buckley, saying she loved him and sending Mr. Buckley erotic pictures. Defendant stated that when he confronted his wife about the pictures, she denied they were of her. Defendant told her he knew it was her and the argument escalated until he claims she pulled a knife. Defendant stated, "She came at me with a knife and after that I took care of it. I stabbed her in the side. I just kept fucking beating her in the head… [Until] her head [was] wide open." Defendant said he "used a heavy thing you jack cars up with [that was] in the living room" and that "I just busted her till her head's wide open…I told her don't fuck with me. You keep on with your shit, I'm not going to beat you—if I'm going in [to prison], I'm going in for life. I'm going to fucking kill you." Defendant told the Sheriff that he believed his wife had been with this other man in Weleetka since December when she worked at the 'Outlaw Diner'. Defendant showed Sheriff Rasmussen the text conversation on a phone he had in his possession at the time of his arrest, which included the pictures sent from his wife. Sheriff Rasmussen said, "And you found those…" Defendant interrupted, "Just a while ago. That's why I killed her ass."

Defendant repeated that his wife continued to claim the pictures were not of her and that he responded by telling her, "That is you [in the pictures]! That is you! Quit lying!" That was when she grabbed the knife." Defendant demonstrated blocking it, "I thought it was kind of a joke [so] I grabbed [the knife] and threw her." The Sheriff asked if that was when Defendant stabbed her and he repeated, "Yeah, [I said] that I wasn't gonna go to jail for no attempted murder or no aggravated. I told her I'm gonna kill you this time. I'm not gonna fuck with you."

Sheriff Rasmussen asked how they got into the living room from the bedroom, the location within the house where she was murdered. Defendant stated that she ran in there against the wall where she pleaded, "I don't want him. I wanna be with you" (after she had already been stabbed). Defendant said, "After that I just done her in" noting that the weapons he used to commit the murder

were placed on the kitchen counter (the car jack and the knife). Sheriff Rasmussen booked Defendant into the Okfuskee County Jail on the charge of Murder.

During the booking process, Sheriff Rasmussen took Defendant's shoes and clothing into evidence. Blood had been noticeably spattered all over Defendant's shoes. A subsequent crime scene investigation by Oklahoma State Bureau of Investigation (OSBI) Crime Scene Technician Ryan Woolly and Medical Examiner Investigator John Miller, revealed the body of Stephanie Michelle Gouge was lying face down just inside the front door of the home. She had a knife wound on her right side about chest high as well as significant trauma to her skull. A hilt-less knife and a heavy steel "bottle" jack with what appeared to be blood and hair on them were located on the kitchen counter.

## IV. PROPOSED WITNESSES, CONTENT AND TIME OF DIRECT EXAMINATION

The Government expects to call the following witnesses in its case-in-chief and anticipates that the direct examination of each will not be greater than that set forth opposite each name[1]:

1. Crystal Harris (911 Dispatcher, Okfuskee County) Approx. 15 Minutes

*Anticipated Testimony:*

She received the initial 911 call made by Defendant whereby he stated he had just killed his wife.

2. Sheriff James O. Rasmussen (Okfuskee County Sheriff's Office) Approx. 2 hours

*Anticipated Testimony:*

He was first law enforcement officer on the scene. After he read the Defendant his *Miranda* warnings, he conducted an interview with the Defendant whereby Defendant admitted to him that he killed his wife.

3. Deputy Dustin Todd (FBI TFO, Okmulgee Deputy Sheriff) Approx. 45 Minutes

*Anticipated Testimony***:**

---

[1] *Note:* This is not an exhaustive list of potential witnesses in the case, but merely the witnesses that the Government believes at this time may be called to testify. A list of potential witnesses will be available for the Court to use during *Voir Dire* of the prospective jurors.

Deputy Todd is the FBI Task Force Officer assigned to the case and will testify consistent with his investigation.

4. Deputy Timothy Rowland (Okfuskee County Sheriff's Office) Approx. 30 Minutes

*Anticipated Testimony:*

He was among the first law enforcement officers on scene and located the body of the victim.

5. Deputy Nikita Muse (Okfuskee County Sheriff's Office) Approx. 30 Minutes

*Anticipated Testimony:*

She was among the first law enforcement officers on scene and assisted with the victim's children.

6. Undersheriff R.L. Wilbourn (Okfuskee County Sheriff's Office) Approx. 20 Minutes

*Anticipated Testimony:*

He was among the first law enforcement officers on scene.

7. Investigator Logan Manshack (Okfuskee County Sheriff's Office) Approx. 30 Minutes

*Anticipated Testimony:*

He was among the first law enforcement officers on scene and assisted in locating the body of the victim as well as organizing the crime scene.

8. Special Agent Ryan Woolly (Oklahoma State Bureau of Investigation) Approx. 1 hour

*Anticipated Testimony:*

He conducted a subsequent crime scene investigation and will testify consistent with his findings.

9. Medical Examiner Investigator John Miller, Approx. 30 Minutes

*Anticipated Testimony:*

He conducted a subsequent crime scene investigation and will testify consistent with his findings.

10. Ta.H. (Minor child of victim) Approx. 30 Minutes

*Anticipated Testimony:*

She is the minor child of the victim, Stephanie Gouge, and has pertinent testimony regarding motive and intent.

11. Jawanna Wheeler (Ok State Child Forensic Interviewer) Approx. 30 Minutes

*Anticipated Testimony:*

She conducted forensic interviews of Ta.H. and T.H., minor children of Stephanie Gouge.

12. Byron Curtis, Ph.D. (Ok State, Chief Forensic Toxicologist) Approx. 30 Minutes

*Anticipated Testimony:*

He will testify as to the results of his toxicology screening.

13. Dr. Leonardo Roquero, M.D. (Ok State Pathologist) Approx. 30 Minutes

*Anticipated Testimony:*

He will testify as to the results and findings of his medical examination and autopsy consistent with his report.

14. John David Holt (Brother of victim) Approx. 30 Minutes

*Anticipated Testimony:*

He is the brother of the victim and has relevant information regarding motive and intent.

15. Dusty Holt (Brother of victim) Approx. 30 Minutes

*Anticipated Testimony:*

He is the brother of the victim and has relevant information regarding motive and intent.

16. Stacey Vass (Okfuskee County DHS) Approx. 30 Minutes

*Anticipated Testimony:*

She will testify as to the details of the Gouge family conditions.

17. Monica Torrey (Okfuskee County DHS) Approx. 30 Minutes

*Anticipated Testimony:*

She will testify as to the details of the Gouge family conditions.

## V. PERTINENT LAW

### A. Statutes Charged

The statutes alleged in the Indictment do not present any novel legal issues.

### B. Defenses

The defendant has given no notice of a defense.

### C. Evidentiary Issues

The Government objects to the giving of an instruction on self-defense. Defendant previously submitted their proposed jury instructions on November 20, 2020. (Doc. 29). Within their tendered instructions, Defendant suggests that he will be presenting a theory related to self-defense, *Def's Prop. Jury Instructions*, p. 15. As the Court will note, self-defense is an affirmative defense, and the Defendant would have the burden of production on each element of the offense. *United States v. Alvarez*, 755 F.2d 830, 842 (11th Cir. 1985). Once the defendant meets its burden of production, the burden shifts to the government, and the government must disprove the defense beyond a reasonable doubt, even though not constitutionally required to do so. See *Martin v. Ohio*, 480 U.S. 228 (1987). A mere scintilla of evidence supporting the defendant's theory is not sufficient to warrant a defense instruction. *United States v. Hall*, 46 F.3d 855 (8th Cir. 1995); *United States v. Morton*, 999 F.2d 435 (9th Cir. 1993); *United States v. Jackson*, 726 F.2d 1466 (9th Cir. 1984).

In this case the Defendant's post arrest statements to law enforcement, even if believed, cannot reasonably establish the elements of self-defense, and therefore, a self-defense instruction should not be given. *Whipple v. Duckworth*, 957 F.2d 418 (7th Cir.), cert. denied, 506 U.S. 876, 113 S.Ct. 218 (1992); *United States v. Garcia*, 625 F.2d 162 (7th Cir. 1980), cert. denied, 449 U.S. 923 (1980); *United States v. Wagner*, 834 F.2d 1474, 1486-87, (9th Cir. 1987), denial of post-conviction relief affirmed, 5 F.3d 544 (9th Cir. 1993), cert. denied, 114 S.Ct. 1110 (1994).

It should be noted that in instances of slight provocation, as may be suggested here, one inflicts with a deadly weapon a punishment outrageous in its nature, and beyond all proportion to the offense, and death results, the law presumes that the act was inspired rather by malignity and a depraved spirit recklessly bent on mischief than by human frailty. *U.S. v. Bevans*, (C.C.Mass.1816), 24 F.Cas. 1138, No. 14589. Similarly, any justification for self-defense ceases when a defendant becomes the aggressor. *U.S. v. Garcia*, C.A.7 (Ill.1980), 625 F.2d 162, certiorari denied 101 S.Ct. 325, 449 U.S. 923, 66 L.Ed.2d 152 (no self-defense when three prison inmates, became aggressors and chased fourth inmate down a hall, caught him and held him down while they stabbed him 47 times). The danger must be imminent, and the resistance used necessary to avert the danger. *U.S. v. Wiltberger*, 28 F.Cas. 727, No. 16738, (C.C.E.D. Pa.1819). See also, *U.S. v. Outerbridge*, Fed.Cas. No. 15,978 (C.C. Cal. 1868).

As noted above, in the instant case, Defendant was never in imminent danger and did not perceive himself to be in danger. Even if we assume he was, his response was to engage in far more resistance that was necessary to avert the danger. When he confronted Stephanie Gouge regarding the erotic photos, he claims that she initiated the hostility by picking up a knife. It should be noted that this claim is corroborated by no one as the only other witness to his claimed version of events is now dead. Assuming Defendant's version as true, he nevertheless states to law enforcement that he was not in fear and believed that her actions were "kind of a joke". His version of the murder suggests that he quickly took the knife from her and then stabbed her multiple times, taking breaks in between stabbings to "smell the knife", then dropping the knife, picking up a bottle jack, and hitting the victim over the head 13 times until her skull was fractured into two pieces. Throughout this murder, Defendant is claiming to have been telling her that he is not going to prison for attempt, he is committed to murdering her. These are far from actions that courts have contemplated when

considering a self-defense instruction and, thus, for the foregoing reasons, the Government respectfully requests that a self-defense instruction not be given.

The Government would also object to Defendant's proposed instruction with respect to the lesser included offenses of both involuntary and voluntary manslaughter, particularly as to involuntary if Defendant is permitted to raise the affirmative defense of self-defense.

Manslaughter differs from first-degree murder in that there is no element of "malice aforethought"; malice is negated by heat of passion. *U.S. v. Scafe*, C.A.10, 822 F.2d 928 (Kan. 1987). "Voluntary manslaughter" is an unlawful, intentional killing committed without malice aforethought and while in a sudden heat of passion due to adequate provocation. *Wakaksan v. U.S.*, C.A., 367 F.2d 639 8 (N.D. 1966), cert. denied 87 S.Ct. 1312, 386 U.S. 994, 18 L.Ed.2d 341.

For purposes of judging whether a manslaughter instruction should be given at all in a homicide prosecution, a sudden quarrel is only one form of provocation within the concept of "heat of passion," and is not separate and apart from "heat of passion"; provocation, whether it be "sudden quarrel" or some other form of provocation, and must be sufficient to cause an ordinary man to lose control of his actions and his reason. *State v. Coop*, 573 P.2d 1017, 223 Kan. 302 (Kan. 1978). No mere words applied by one to another will reduce the act of killing from murder to manslaughter. *U.S. v. Carr*, C.C.S. 25 F.Cas. 306, No. 14732, (D. Ga.1872). See also, *U.S. v. Wiltberger*, Fed.Cas. No. 16,738, (C.C. Pa.1819), certified questions answered 18 U.S. 76, 5 Wheat. 76, 5 L.Ed. 37.

In a similarly shocking murder, a defendant was convicted of second-degree murder of his parents in Indian country for repeatedly slashing them with a three-foot-long machete. The Court held that he was not entitled to an instruction on involuntary manslaughter as a lesser-included offense, even though that defendant claimed he suffered from mental impairment, and where that defendant made no claim that he accidentally stabbed his parents with three-foot-long machete.

*United States v. Lasley*, C.A.8 (Iowa 2016), 832 F.3d 910, rehearing and rehearing *en banc* denied, certiorari denied 137 S.Ct. 823, 196 L.Ed.2d 608.  In the instant case, there has been no claim of accidental killing, and no suggestion of mental impairment.

In a prosecution which resulted in a conviction of first-degree murder, the defendant was not entitled to his requested voluntary manslaughter instruction, since defendant's "imperfect self-defense" theory that he used excessive force in defending himself could have reduced the intentional killing by use of excessive force from murder to voluntary manslaughter, but not to involuntary manslaughter.  *U.S. v. Skinner*, C.A.9 (Ariz. 1982), 667 F.2d 1306, certiorari denied 103 S.Ct. 3569, 463 U.S. 1229, 77 L.Ed.2d 1410.  It has been held that the crime of involuntary manslaughter is inconsistent with a theory of self-defense, and thus where defendant in a murder trial asserts self-defense, there is no error in refusing to instruct on involuntary manslaughter.  *U.S. v. Smith*, C.A.10, 521 F.2d 374 (Kan. 1975).

Here, Defendant has never suggested that this was a mistaken killing, but is apparently now claiming that he was simply defending himself.  However, his position is untenable as the evidence makes clear that his anger and frustration had been brewing for months prior to the murder, and when he finally did engage on Valentine's Day of 2020, he explicitly intended to kill Stephanie Gouge, and told law enforcement that this was indeed his intention.  Defendant's actions are far from those that courts have contemplated when considering a self-defense instruction and cannot be reconciled with a contemporaneous instruction for manslaughter, thus, for the foregoing reasons, the Government respectfully requests that neither a self-defense instruction, nor manslaughter instructions be given.

## VI. CONCLUSION

This trial brief is offered to acquaint the Court with factual and legal issues which may arise at trial. The Government requests that the Court grant it leave to submit additional memoranda at a later time.

Respectfully submitted,

BRIAN J. KUESTER
United States Attorney

s/ Benjamin P. Gifford
Benjamin P. Gifford, TBA #24111143
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
(918) 684-5100 (Telephone)
(918) 684-5150 (Facsimile)
ben.gifford@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of December 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: Robert S. Williams - Attorney for the Defendant.

Benjamin P. Gifford
Assistant United States Attorney